UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X   20 CV 2502 (LJL)(BCM)
CAROL LOPEZ,

Plaintiff,

-against-

THE CITY OF NEW YORK,
POLICE OFFICER ANTHONY SALINE (SHIELD NO.
12924), POLICE OFFICER WILLIAM GONZALEZ,
POLICE OFFICER CRYSTAL DONES, POLICE
OFFICER STEVEN TORRES, AND JOHN DOES 1-4,

Defendants.

-------------------------------------------------------------------X

---

## PLAINTIFF'S MEMORANDUM OF LAW
### IN OPPOSITION TO THE DEFENDANTS' PARTIAL MOTION TO DISMISS

---

J. Remy Green, Esq.
Jessica Massimi, Esq.
COHEN & GREEN P.L.L.C.
1639 Centre Street, Suite 216
Ridgewood, NY  11385
929-888-9480
remy@femmelaw.com
jessica@femmelaw.com
*Attorneys for Plaintiff*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... ii

PRELIMINARY STATEMENT .................................................................................. 1

STATEMENT OF FACTS ......................................................................................... 2

STANDARD OF REVIEW ......................................................................................... 7

ARGUMENT ............................................................................................................. 8

   I.  PLAINTIFF HAS PROPERLY PLED CLAIMS FOR MUNICIPAL LIABILITY. ............. 8

     A.    Plaintiff Has Adequately Alleged that the Failure to Train and Supervise NYPD Employees Resulted in Her Constitutional Violation. ........................................................... 8

     B.    Plaintiff Has Adequately Alleged the Existence of a Persistent Practice Necessary to State a Viable *Monell* Claim. ............................................................................. 14

     C.    Plaintiff Has Adequately Pled That the City's Municipal Policy's Led to The Individual Defendants' Violations of Plaintiff's Rights. ...................................................... 20

     D.    The Court should Deny Defendants' Request for Bifurcation of *Monell* Discovery. 22

CONCLUSION ......................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adickes v. S.H. Kress & Co.*,
   398 U.S. 144 (1970)........................................................................................................9

*Ambrose v. City of New York*,
   623 F. Supp. 2d 454 (S.D.N.Y. 2009)...........................................................................23

*Amnesty America v. Town of W. Hartford*,
   361 F.3d 113 (2d Cir. 2004).........................................................................................10

*Ashcroft v. Iqbal*,
   556 U.S. 662, 129 S. Ct. 1937 (2009)............................................................................7

*Askins v. Doe*,
   727 F. 3d 248 (2d Cir. 2013)........................................................................................23

*Baines v. City of New York*,
   2016 U.S. Dist. LEXIS 58576 (S.D.N.Y. May 3, 2016)(JMF) ....................................23

*Bangura v. The City of New York*,
   7-CV-2966(DRH)(ETB), 2009 U.S. Dist. LEXIS 808 (E.D.N.Y. Jan. 7, 2009)....................18

*Barrett v. Orange County Human Rights Comm'n*,
   194 F.3d 341 (2d Cir. 1999).........................................................................................23

*Bd. Of Cty. Comm'rs of Bryan Cty. V. Brown*,
   520 U.S. 397 (1997)......................................................................................................20

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)........................................................................................................7

*Bermudez v. City of New York*,
   2019 U.S. Dist. LEXIS 3442, 2019 WL 136633 (E.D.N.Y., Jan. 8, 2019) ............................23

*Brass v. American Film Technologies, Inc.*,
   987 F.2d 142 (1993)........................................................................................................8

*Brodeur v. City of New York*,
   99-CV-651 (WHP), 2002 U.S. Dist. LEXIS 4500 (S.D.N.Y. 2002) ........................................7

*Case v. The City of New York*,
   14 CV 9148 (S.D.N.Y) ..................................................................................................6

*Case v. City of New York*,
   233 F. Supp. 3d 372, 2017 U.S. Dist. LEXIS 19374 (S.D.N.Y. Feb. 10, 2017) ............ *passim*

*Cash v County of Erie*,
    654 F3d 324, 334 (2d Cir 2011)...............................................................................10, 11

*Castilla v. City of New York*,
    9-CV-5446, 2011 U.S. Dist. LEXIS 95619 (S.D.N.Y. Sept. 6, 2012) ....................................16

*Chamberlain v. City of White Plains*,
    986 F.Supp.2d 363 (S.D.N.Y 2013)...............................................................................15

*City of Canton v. Harris*,
    489 U.S. 378 (1989)...........................................................................................9, 10, 21

*Colon v. City of New York*,
    Nos. 09 Civ. 8, 09 Civ. 9, 2009 U.S. Dist. LEXIS 110520, 2009 WL 4263362
    (E.D.N.Y. Nov. 25, 2009)...........................................................................................5, 12

*Connick v. Thompson*,
    563 U.S. 51 (2011)...........................................................................................9, 10, 15

*Cordero v. City of N.Y.*,
    282 F. Supp. 3d 549 (E.D.N.Y. 2017) ..................................................................................21

*DiFolco v. MSNBC Cable LLC*,
    622 F.3d 104 (2d Cir. 2010).................................................................................................7

*Dinler v. City of New York*,
    04-cv-7921 (S.D.N.Y.)....................................................................................................6, 20

*DiPippo v. Cty. Of Putnam*,
    17-CV-7948 (NSR), 2019 U.S. Dist. LEXIS 33071 (S.D.N.Y. Feb. 28, 2019) ......................14

*Doe v. Columbia Univ.*,
    831 F.3d 46 (2d Cir. 2016)....................................................................................................7

*Edrei v. City of New York*,
    254 F. Supp. 3d 565, 2017 U.S. Dist. LEXIS 83269 (S.D.N.Y. May 31,
    2017)(RWS)...........................................................................................................................15

*Felix v. City of New York*,
    344 F. Supp.3d 644 (S.D.N.Y. 2018)...................................................................................14

*Gallagher v. NY State Bd. of Elections*,
    477 F. Supp. 3d 19,48 n.4 (S.D.N.Y. 2020)........................................................................22

*Gavin v. City of New York*,
    20-cv-08163-JPO, ECF No. 36 (SDNY 2021) .......................................................................6

*Goode v. Newton*,
  12-CV-754 (JBA), 2013 U.S. Dist. LEXIS 35171 (D. Conn. Mar. 14, 2013)........................15

*Gregory v. Daly*,
  243 F.3d 687 (2d Cir. 2001)...........................................................................................8

*J.K.J. and M.J.J. v. Polk County and Darryl L. Christensen*,
  960 F.3d 367 (7th Cir. May 15, 2020) .........................................................................20

*Jenkins v. City of New York*,
  478 F.3d 76 (2d Cir. 2007)...........................................................................................9

*Lynch v. City of New York*,
  952 F.3d 67 (2d Cir. 2020)......................................................................................20, 22

*MacNamara v. City of New York*
  No. 04 Civ. 9216, 2007 U.S. Dist. LEXIS 79870, 2007 WL 3196295
  (S.D.N.Y. Oct. 30, 2007) .......................................................................................13, 20

*McKenna v. Wright*,
  386 F.3d 432 (2d Cir. 2004).........................................................................................7

*Michael v. County of Nassau*,
  9-CV-5200 (JS), 2010 U.S. Dist. LEXIS 82764 (E.D.N.Y. Aug. 11, 2010) ....................16, 17

*Monell v. Department of Social Services of the City of New York*,
  436 U.S. 658 (1978) .......................................................................................... *passim*

*Nnodimele v. Derienzo*,
  No. 13 CV 3461 (ARR)(RLM), 2016 WL 3561708 (E.D.N.Y. June 27, 2016).....................23

*Nogbou v. Mayrose*,
  400 Fed. Appx. 617 (2d Cir. 2010) .................................................................................8

*Osterhoudt v. City of New York*,
  No. 10 Civ. 3173, 2012 U.S. Dist. LEXIS 139700, 2012 WL 4481927
  (E.D.N.Y. Sept. 27, 2012).................................................................................12, 13, 20

*Packer v. Skid Roe, Inc.*,
  938 F.Supp. 193 (S.D.N.Y. 1996)..................................................................................22

*Peat v. City of New York*,
  No. 12 Civ. 08230 (S.D.N.Y.) ....................................................................................6, 20

*Ricciuti v. N.Y.C Transit Authority*,
  941 F.2d 119 (2d Cir. 1991).........................................................................................8

*Sorlucco v. New York City Police Department*,
971 F.2d 864 (2d Cir. 1992)................................................................................9

*Tellabs, Inc., v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)...................................................................................5, 12

*Tolan v. Cotton*,
134 S. Ct. 1861 (2014)................................................................................7

*Tyus v. Newton*,
13-CV-1486 (SRU), 2015 U.S. Dist. LEXIS 42089 (D. Conn. Mar. 31, 2015).....................15

*Walker v. City of New York*,
974 F.2d 293 (2d Cir. 1992).......................................................11, 13, 14

*Williams v. City of New York*,
121 F. Supp. 3d 354, 2015 U.S. Dist. LEXIS 103116 (S.D.N.Y. Aug. 5, 2015)....................10

**Statutes**

42 U.S.C. § 1983................................................................................................8

**Other Authorities**

5B Wright & Miller § 1357 (3d ed. 2004 and Supp. 2007)........................................5, 12

Brittany Kriegstein & Noah Goldberg, *Bronx judge slams NYPD cop for
'unreliable' testimony about drill rapper C Blu*, NY Daily News (Mar. 8,
2022)...........................................................................................5, 17, 21

New York City Law Department, Corporation Counsel Report Pursuant to
Executive Order 58 at 2 (2020)..............................................................................21

## PRELIMINARY STATEMENT

The New York City Police Department's ("NYPD") longstanding policies and practices of using dishonesty and perjury to justify their existence and their budget have been widely recognized by judges, journalists, and the police themselves. It goes without saying that it is unconstitutional for police to lie under oath. Yet, as Plaintiff has alleged in her First Amended Complaint ("FAC") – citing to court decisions, police guilty pleas, legal scholars, and experts – the NYPD engages in these practices casually and pervasively to secure overtime, good performance reviews, meet quotas and "productivity goals," and for little reason at all. This is another such case.

 In sum, Plaintiff is a mother and a student who had never been arrested before February 3, 2019 when the Defendants violently assaulted and arrested her and her son. Following Plaintiff's assault by the Defendants, an NYPD supervisor filled out documentation noting "substantial physical injury" to Lopez "which resulted from police activity," while the Defendants filled out an Arrest Report against Plaintiff alleging that they had used no physical force against her. In the end, Plaintiff's and her son's criminal charges were dismissed while NYPD's IAB substantiated charges against Defendant Police Officer Saline and other officers for failing to document Plaintiff's injuries and activate body cameras.

Defendant Saline and Police Officer William Gonzalez were reprimanded by IAB related to this incident for "Abuse of Department Regulations" for failure to activate their body cameras. As a result, IAB gave Defendant Saline a Schedule A command Discipline. Additionally, IAB found that Officer Joseph Manni failed to properly activate his body camera. IAB substantiated charges against Officer Steven Torres and he received a Schedule "A" command discipline.

Defendants filed a partial motion to dismiss Plaintiff's *Monell* claims, and request for bifurcation. Plaintiff respectfully requests that the Court deny Defendants' motion.

## STATEMENT OF FACTS

On February 3, 2019, Plaintiff was arrested and violently assaulted by Defendants. FAC, ECF No. 61, annexed to the Declaration of Remy Green as Exhibit "1". This incident began when, at about 8:00 p.m. on that evening, Ms. Lopez was enjoying a quiet evening at home located at 2527 Valentine Avenue, Bronx, NY. At this time, Lopez's neighbors urgently notified her that the NYPD were outside assaulting and arresting her son. Lopez went outside and observed three of the Defendants punching and hitting her son in the backseat of a marked NYPD police car. Plaintiff's son's legs were dangling out of the police car, and her son was screaming for help. FAC ¶¶ 13-17.

Upon seeing the Defendants assault her son, Lopez yelled out "that's my son!" In response, one of the Defendants who was involved in the assault on Plaintiff's son charged towards Plaintiff and, without any warning or legal justification, punched Plaintiff on her head. In response to being punched, Lopez raised her hands above her head with open palms to indicate that she did not have any weapons and had no intention of engaging in any interference or threatening activity. FAC ¶¶ 18-21.

Despite Lopez's docile response to being punched, the Defendant who punched her inexplicably ordered Plaintiff to "stop resisting." However, Plaintiff had not resisted arrest, nor had Plaintiff been placed under arrest at all. Upon information and belief, that shout to "stop resisting" was intended to give the false impression to anyone watching later body worn camera footage that Plaintiff was resisting arrest. At all times during Plaintiff's beating by the police, Defendant Saline was obstructing his body worn camera. At this point, the other two Defendants

who were assaulting Plaintiff's son also came towards Plaintiff. Without any legal justification or excuse, the fourth Defendant – who is, upon information and belief – one of Defendants Saline, Gonzalez, or Dones – grabbed Plaintiff and slammed her to the ground and handcuffed Plaintiff. After Defendants slammed Plaintiff to the ground and handcuffed her, the first Defendant who punched Plaintiff pulled out his gun and pointed it at Plaintiff. FAC ¶¶ 22-29.

Defendants placed Plaintiff in the back of a police vehicle and transported her to the station house of the 52nd Precinct, where she was held for a number of hours before she was transported to North Central Hospital in the Bronx to receive treatment for the injuries she sustained at the hands of the Defendants. While at North Central Hospital, Plaintiff remained in the custody of the NYPD. The Defendants then transported Plaintiff back to the 52nd Precinct stationhouse, where she was detained for several additional hours before she was transported to Bronx County Central Booking where she was held in custody for an additional number of hours. FAC ¶¶ 30-33.

Lopez was arraigned on a criminal complaint containing false allegations provided by Defendant Saline. In support of the criminal complaint, Defendant Saline made several false allegations, including but not limited to, the following allegations:

> Deponent states that at the above time and place, as he was performing a lawful arrest of a Mr. Brandon Altreche, when Mr. Altreche's mother-the defendant, did begin grabbing hold of him and his colleagues and pulling them away from her son.

> Deponent further states that the defendant began pushing and shoving him and his colleagues as they attempted to effect a lawful arrest of defendant's son. Deponent further states that defendant obstructed governmental administration in that defendant interfered with police officers' ability to make said lawful arrest.

> Deponent further states that when officers then tried to also arrest the defendant-mother, defendant-mother resisted arrest in that she kicked her legs, flailed her arms and pulled away from the officers. Deponent further states that defendant would not allow her hands to be brought behind her back.

These and other allegations were false and defendant Saline knew them to be false when he made them. FAC ¶¶ 34-36.

Defendant Torres similarly swore out false arrest paperwork. Defendant Torres arrived at the scene after Plaintiff's arrest and had no personal knowledge of the incident. Despite that, Defendant Torres filled out an arrest report falsely stating that Plaintiff interfered with another arrest and flailed her arms and pulled her wrists away to prevent being placed in handcuffs. Torres failed to indicate in the report that he did not have personal knowledge of these allegations, which is a violation of the patrol guide. FAC ¶¶ 37-40.

Following Plaintiff's assault by the Defendants, an NYPD supervisor filled out documentation noting "substantial physical injury" to Lopez "which resulted from police activity," while the Defendants filled out an Arrest Report against Plaintiff alleging that they had used no physical force against her. FAC ¶¶ 41. In the end, Plaintiff's criminal charges were dismissed while NYPD's IAB substantiated charges against Defendant Police Officer Saline and other officers for failing to document Plaintiff's injuries and activate body cameras. FAC ¶¶ 44.

Plaintiff has plausibly alleged that the NYPD has engaged in a persistent practice of violating the constitutional rights of individuals by (1) engaging in dishonestly and perjury by using knowingly false statements in accusatory instruments to justify their existence and budget by securing overtime, good performance reviews, and meeting quotas and "productivity goals", and (2) engaging in perjury and dishonesty to justify the use of excessive force. FAC ¶¶ 48-66. Boiled down, Plaintiff has plausibly alleged that lying for any or no reason has become so pervasive among the NYPD that it is a de facto policy that cuts across the department.  Indeed, even a quick look at the news in the past few days finds examples of this policy and practice playing out, with a Bronx Judge observing, "I cannot state how absolutely incredible [a police

officer's] testimony was. It was inconsistent with the video, it was inconsistent with his fellow officer's testimony, it was self-serving, it had no value." Brittany Kriegstein & Noah Goldberg, *Bronx judge slams NYPD cop for 'unreliable' testimony about drill rapper C Blu*, NY Daily News (Mar. 8, 2022).[1]  And unlike the limitations Defendants offer, that most recent round of casual lying had nothing to do with a protest, overtime, or any other carefully drawn line.

Members of the NYPD engage in this persistent practice of lying either directly, by facilitating such constitutional violations, or by failing to prevent such violations – to such a degree that the City was on notice of its need to protect civilians from the NYPD. *See,* for example, FAC ¶¶ 52-55 (citing to several cases some of which in turn contain citations to dozens of other cases which "demonstrate 'a pattern and practice of constitutional abuse' involving the use of mass arrest policies and practice similar to the ones that led to their constitutional deprivations." *Case v. City of New York*, 233 F. Supp. 3d 372, 404, 2017 U.S. Dist. LEXIS 19374, *65, 2017 (S.D.N.Y. Feb. 10, 2017) (citing *Mandal v. City of New York*, Nos. 02 Civ. 1234, 02 Civ. 1367, 2007 U.S. Dist. LEXIS 83642, 2007 WL 3376897, at *2 (S.D.N.Y. Nov. 13, 2007), *MacNamara v. City of New York* No. 04 Civ. 9216, 2007 U.S. Dist. LEXIS 79870, 2007 WL 3196295, at *1 (S.D.N.Y. Oct. 30, 2007), *Osterhoudt v. City of New York*, No. 10 Civ. 3173, 2012 U.S. Dist. LEXIS 139700, 2012 WL 4481927, at *1-2 (E.D.N.Y. Sept. 27, 2012)).[2] It also bears mentioning that the cases

---

[1] Available at https://www.nydailynews.com/new-york/ny-c-blu-rapper-camrin-williams-nypd-cop-shooting-bronx-20220309-lkqwk7wq7zenxln2tv5xllb6ui-story.html.

[2] These quotes and citations are properly considered on a motion to dismiss. "[C]ourts *must* consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc., v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (emphasis added), *citing* 5B Wright & Miller § 1357 (3d ed. 2004 and Supp. 2007); *Colon v. City of New York*, Nos. 09 Civ. 8, 09 Civ. 9, 2009 U.S. Dist. LEXIS 110520, 2009 WL 4263362, at *2 (E.D.N.Y. Nov. 25, 2009) (denying motion to dismiss where plaintiff's allegation that officers manufactured drug evidence, combined with the court's "knowledge of cases in other federal and state courts," stated a

cited specifically in the Complaint involve many incidents — not one incident per complaint.  *Cf.*

*Gavin v. City of New York*, 20-cv-08163-JPO, ECF No. 36 at 10 (SDNY 2021) (finding the plaintiff

"has pleaded 'repeated complaints of civil rights violations,' brought by hundreds of plaintiffs

across *Peat*, *Case*, *Dinler*, and *Dinler*'s related cases."). That places this case well outside the "two

incidents of unconstitutional conduct by low-level employees" (*id.*) type cases that Defendants

rely on.

The Mollen Commission reported on the very tactics Plaintiff complains of here, lending

further support to her *Monell* claims. FAC ¶ 55 ("Simply put, despite the devastating consequences

of police falsifications, there is a persistent belief among many officers that it is necessary and justified,

even if unlawful"). Plaintiff has also cited several instances where members of the NYPD have

admitted to the very tactics Plaintiff complaints of here. FAC ¶ 55 ("In June 2011 . . . NYPD Sergeant

William Eiseman pled guilty to perjury and falsifying police records . . ."; "In 2007, former NYPD

Officer Dennis Kim admitted to accepting money and sexual favors from the proprietor of a brother

in Queens County in exchange for protecting the brother . . .").

The NYPD engages in this illegal conduct, in part, for monetary gain: to justify its own

existence and budget through "productivity goals." FAC ¶ 56 (describing several examples of

NYPD members admitting to productivity goals, such as the requirement that officers issue more

summonses to get overtime, and the fact that the NYPD issues poor performance ratings for fewer

arrests).

---

plausible *Monell* claim). The *Case* quote and citations are incorporated by reference into Plaintiff's
First Amended Complaint because, as discussed below the quotes are from the decision from the
Honorable Analisa Torres denying the City's attempt to dismiss similar *Monell* claims, and the
case citations are contained in the Complaint of *Case v. The City of New York*, 14 CV 9148
(S.D.N.Y), the content of which is referenced in Plaintiff's First Amended Complaint. First
Amended Complaint, ECF No. 61 ¶ 54.

## STANDARD OF REVIEW

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a court typically must accept the material facts alleged in the complaint as true and construe all reasonable inferences in plaintiff's favor." *Brodeur v. City of New York*, 99-CV-651 (WHP), 2002 U.S. Dist. LEXIS 4500, at *6 (S.D.N.Y. 2002) (internal citations omitted). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. A court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief above the speculative level." *Twombly*, 550 U.S. 544 (2007).[3]

In deciding a Rule 12(b)(6) motion, the Court's role is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 113 (2d Cir. 2010) (citation omitted). "Furthermore, the plaintiff is at liberty to plead different theories, even if they are inconsistent with one another, and the court must accept each sufficiently pleaded theory at face value, without regard to its inconsistency with other parts of the complaint." *Doe v. Columbia Univ.*, 831 F.3d 46, 48 (2d Cir.

---

[3] Similarly, in the context of summary judgment motions, the Supreme Court has emphasized the "importance of drawing inferences in favor of the nonmovant." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014). "By weighing the evidence and reaching factual inferences contrary to [Plaintiffs'] competent evidence, the court below neglected to adhere to the fundamental principle that at the summary judgment stage, reasonable inferences should be drawn in favor of the nonmoving party." *Id*. at 1868. These principals must also apply in the Fed. R. Civ. P. 12(b)(6) context where discovery has not even taken place. Indeed "[a] party endeavoring to defeat a lawsuit by a motion to dismiss for failure to state a claim faces a 'higher burden' than a party proceeding on a motion for summary judgment." *McKenna v. Wright,* 386 F.3d 432, 436 (2d Cir. 2004).

2016) (citing Fed. R. Civ. P. 8(d)(3)) ("A party may state as many separate claims ... as it has, regardless of consistency"); *Gregory v. Daly*, 243 F.3d 687, 701 n. 12 (2d Cir. 2001).

"A complaint may not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Brass v. American Film Technologies, Inc.,* 987 F.2d 142, 150 (1993); *Nogbou v. Mayrose*, 400 Fed. Appx. 617, 619 (2d Cir. 2010) (citation omitted).

## ARGUMENT

### POINT I
### PLAINTIFF HAS PROPERLY PLED CLAIMS FOR MUNICIPAL LIABILITY.

**A. Plaintiff Has Adequately Alleged that the Failure to Train and Supervise NYPD Employees Resulted in Her Constitutional Violation.**

A municipality may not be held liable under §1983 simply for the isolated unconstitutional acts of its employees. *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 691 (1978) (rejecting *respondeat superior* as a basis for §1983 liability). To impose §1983 liability upon a municipality, a plaintiff must demonstrate that any constitutional harm suffered was the result of a municipal policy or custom. *Id.* at 690-691; *see also Ricciuti v. N.Y.C Transit Authority*, 941 F.2d 119, 122 (2d Cir. 1991). The policy or custom used to establish liability need not be contained in an explicitly adopted rule or regulation. *Ricciuti*, 941 F.2d at 123. Constitutional deprivations actionable under §1983 may be "visited pursuant to governmental 'custom' even though such custom has not received formal approval through the body's official decision-making channels." *Monell* at 691. "Congress included customs and usages [in §1983] because of the persistent and widespread discriminatory practices of state officials. . . . Although not authorized by written law, such practices of state officials could well be so permanent and well

settled as to constitute a 'custom or usage' with the force of law." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-168 (1970). A persistent practice may constitute municipal policy where it is carried out by subordinate employees where their unconstitutional practice is so manifest as to imply the acquiescence of senior policy-making officials. *Sorlucco v. New York City Police Department*, 971 F.2d 864, 871 (2d Cir. 1992).

Plaintiff's allegations of dishonesty in the criminal complaint hardly constitute the "isolated unconstitutional acts" prohibition for *Monell* claims. As cited in Plaintiff's complaint, it is widely recognized that the City permits a systemic culture of lying to justify overtime, quotas, "productivity goals", and good performance evaluations. This tactic is in turn used to justify the NYPD's existence and budget as a whole.

Despite being on notice of the widespread civil rights violations, the City acts with deliberate indifference to the substantial risk of harm to Plaintiff and other individuals. Plaintiff's *Monell* claim is grounded on the City's inaction where greater supervision and training could have taught members of the NYPD how to utilize tactics at the police academy without infringing on the rights of citizens.

A plaintiff may state a claim for municipal liability by alleging that a municipal defendant's failure to train or supervise amounts to "deliberate indifference" to rights of those with whom the municipality's employees interact. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *Jenkins v. City of New York,* 478 F.3d 76, 94 (2d Cir. 2007). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson,* 563 U.S. 51, 61 (2011) (quoting *Bd. Of Cty. Comm'rs of Bryan Cty. V. Brown,* 520 U.S. 397, at 410 (1997). "Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city

employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Id.* "The city's 'policy of inaction' in light of notice that its program will cause constitutional violations 'is the functional equivalent of a decision by the city itself to violate the Constitution." *Id.* at 61-62 (quoting *Connick* at 61).

"[A] pattern of similar violations is not absolutely necessary to prove municipal liability for failure to train. *Williams v. City of New York*, 121 F. Supp. 3d 354, 373-374, 2015 U.S. Dist. LEXIS 103116, *40-41 (S.D.N.Y. Aug. 5, 2015). The operative inquiry is whether the municipality was on *notice* that "a particular omission in their training program causes city employees to violate citizens' constitutional rights." *Connick*, 131 S. Ct. at 1359; *Amnesty America v. Town of W. Hartford*, 361 F.3d 113, 128 (2d Cir. 2004) (the Second Circuit has "never required" proof of a pattern of violations to establish deliberate indifference; "plaintiffs' evidence must establish only that a policymaking official had notice of a potentially serious problem of unconstitutional conduct, such that the need for corrective action or supervision was 'obvious.'"). Notice may be proved by evidence of a pattern of similar violations, *Connick*, 131 S. Ct. at 1359, or by evidence of one injury if "the need for more or different training [was] so obvious, and the inadequacy [of the training] so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need" for different training, *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989). "The operative inquiry is whether the[] facts demonstrate that the policymaker's inaction was the result of 'conscious choice' and not 'mere negligence.'" *Cash v County of Erie,* 654 F3d 324, 334 (2d Cir 2011).

"Policymakers'" continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the

consequences of their action – the 'deliberate indifference' – necessary to trigger municipal liability." *Id*. (quoting *Bryan Cty.,* 520 U.S. at 407).

"At the motion to dismiss stage, the Second Circuit uses a three-prong test to determine whether a plaintiff has demonstrated a municipality's 'deliberate indifference' in the context of a failure to train claim." *Case v. City of New York*, 233 F. Supp. 3d 372, 404, 2017 U.S. Dist. LEXIS 19374, *65, 2017 (S.D.N.Y. Feb. 10, 2017) (citing *Walker v. City of New York,* 974 F.2d 293, 297-298 (2d Cir. 1992). "First, the plaintiff must show that the policymaker knows 'to a moral certainty' that her employees will confront a given situation." *Walker* at 297 (quoting *Canton*, 489 U.S. ay 390 n. 10). "Second, the plaintiff must show that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation." *Id.* And, third, "the plaintiff must show that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." *Id.* at 298

In *Case v. City of New York*, 233 F. Supp. 3d 372, 404, 2017 U.S. Dist. LEXIS 19374, *65, 2017 (S.D.N.Y. Feb. 10, 2017), the Honorable Analisa Torres found that Plaintiffs adequately stated a *Monell* claim based on the City's failure to train where "Plaintiffs point[ed] to a number of cases spanning the period from 2000 to 2012 that demonstrate 'a patterns and practice of constitutional abuse' involving the use of mass arrest policies and practices similar to the ones that led to their constitutional deprivations." *Id*. at 405. "[I]n the context of Rule 12, where plausibility is an issue, it is hard to ignore these cases, which suggest the conduct complained of is not limited to the four corners of [Plaintiffs'] complaint." *Case* at 406 (quoting *Osterhoudt v. City of New York*, No. Civ. 3173, 2012 U.S. Dist. LEXIS 139700, 2012 WL 4481927, at *1-2 (E.D.N.Y. Sept. 27, 2012). Citations to pending lawsuits and settlements are sufficient at the motion to dismiss

stage to "permit a plausible inference of deliberate indifference. *Osterhoudt* at *2; *see also Colon v. City of New York*, Nos. 09 Civ. 8, 09 Civ. 9, 2009 U.S. Dist. LEXIS 110520, 2009 WL 4263362, at *2 (E.D.N.Y. Nov. 25, 2009) (denying motion to dismiss where plaintiff's allegation that officers manufactured drug evidence, combined with the court's "knowledge of cases in other federal and state courts," stated a plausible *Monell* claim). As the court in *Osterhoudt* acknowledged, should such a *de facto* policy or practice exist, "it will not likely be shown by direct evidence." 2012 U.S. Dist. LEXIS 139700, 2012 WL 4481927, at *2. The Courts in *Osterhoudt* and *Case* recognized the "formidable hurdle" plaintiffs face at the pleading stage, and found that Plaintiffs – by citing to four other cases, some of which with unproved allegations – had "nudged [their] claims across the line from conceivable to plausible." *Case* at *406 (discussing *Osterhoudt* and quoting *Twombly*, 550 U.S. at 570).

Similarly, here, Plaintiff has cited several lawsuits, public reports, and admissions, and guilty pleas by officers to allege her failure to train claim. The lawsuits, in turn, cite to yet more examples of NYPD civil rights violations of protesters. *Colon v. City of New York*, Nos. 09 Civ. 8, 09 Civ. 9, 2009 U.S. Dist. LEXIS 110520, 2009 WL 4263362, at *2 (E.D.N.Y. Nov. 25, 2009) (denying motion to dismiss where plaintiff's allegation that officers manufactured drug evidence, combined with the court's "knowledge of cases in other federal and state courts," stated a plausible *Monell* claim). "[C]ourts *must* consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. *See* 5B Wright & Miller § 1357 (3d ed. 2004 and Supp. 2007)." *Tellabs, Inc., v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (emphasis added).

For instance, in their Second Amended Complaint at ¶ 54, *Case* Plaintiffs cited to:

- *MacNamara v. City of New York* No. 04 Civ. 9216, 2007 U.S. Dist. LEXIS 79870, 2007 WL 3196295, at *1, brought by demonstrators arrested during the 2004 RNC, and in which the Honorable James C. Francis noted that the Honorable Kenneth M. Karas stated that "one reasonable interpretation" of the deposition testimony of one of the arresting officers "is that he included false information in the narrative section of his booking report because he was instructed to do so by a Lieutenant in the NYPD Legal Bureau," and that, "[m]ore disturbing still, [the officer's] testimony appears to indicate that this unlawful act was not an isolated incident";

- *Osterhoudt v. City of New York*, No. 10 Civ. 3173, 2012 U.S. Dist. LEXIS 139700, 2012 WL 4481927, at *1-2 (E.D.N.Y. Sept. 27, 2012), in which the plaintiff alleged that he observed, on election night in November 2008, "NYPD officers picking fights and indiscriminately arresting bystanders," and was "swept up in the mass arrests, . . . charged with obstructing governmental administration, resisting arrest, and disorderly conduct and detained for 17 hours before his charges were adjourned in contemplation of dismissal"; and where the court denied defendants' motion to dismiss the plaintiff's *Monell* claims, which the plaintiff supported "by citing other lawsuits against the City for mass arrests at Critical Mass bike rides, the 2004 Republican National Convention, and the World Economic Forum," including "a number of complaints alleging that the NYPD conducted mass arrests at demonstrations and in crowd control situations, plausibly alleging a widespread departmental policy of arresting political demonstrators without determining probable cause on an individual basis."

Many of these allegations are strikingly similar to Plaintiff's allegations, and on a much larger scale. For example, in *Osterhoudt*, as cited above, the Plaintiff alleged that he observed "NYPD officers picking fights and indiscriminately arresting bystanders," and was "swept up in the mass arrests . . . charged with obstructing governmental administration, resisting arrest, and disorderly conduct and detained for 17 hours before his charges were adjourned in contemplation of dismissal." If the NYPD is willing to engage in illegal conduct in such a brazen way regarding multiple bystanders at one time, so too would they be willing to engage in the same illegal conduct against Plaintiff, especially where there are fewer witnesses than described in the *Osterhoudt* case.

Plaintiff's *Monell* claims also involves allegations of perjury by the NYPD to justify their false arrests and false allegations. "While it is reasonable for city policymakers to assume their employees possess common sense, where there is a history of conduct rendering this assumption untenable, city policymakers may display deliberate indifference by doing so." *Walker v. City of*

*New York*, 974 F.2d 293, 300 (2d Cir. 1992). In *Walker*, the Second Circuit reversed the district court's dismissal of the civil rights plaintiff's *Monell* claim. In that case, plaintiff contended that "the police department had an obligation to train and supervise officers not to commit perjury or aid in the prosecution of the innocent." *Walker*, 974 F.2d at 299. The City argued there that the proper response on the part of officers – to not lie – "is so obvious to all without training or supervision" that the "failure to train or supervise" would not produce as wrong decision as to support an inference of deliberate indifference by the City. *Id.* The Court then explicitly ruled that Walker should be permitted to take discovery to see if he could "produce some evidence that policymakers were aware of a pattern of perjury by police officers but failed to institute appropriate training or supervision." *Id.*

### B. Plaintiff Has Adequately Alleged the Existence of a Persistent Practice Necessary to State a Viable *Monell* Claim.

Defendants' argument that Plaintiff has not properly alleged a *Monell* claim hinges on two incorrect arguments: First, the City's apparent belief that Plaintiff has not cited to enough instances of constitutional violations, though the City does not state what a sufficient number would be. Second, the City's apparent belief that a *Monell* claim may only find support by citing to other instances with exactly similar facts. Plaintiff's *Monell* claims need not be based on the type of granular similarity of prior incidents suggested by the City. *See Felix v. City of New York*, 344 F. Supp.3d 644, 662 (S.D.N.Y. 2018) ("Even if the precise factual circumstances of these cases vary," plaintiff's allegation that they show NYPD officers mishandled prior encounters with people in mental crises "is at least a plausible one"); *DiPippo v. Cty. Of Putnam*, 17-CV-7948 (NSR), 2019 U.S. Dist. LEXIS 33071, at *31 (S.D.N.Y. Feb. 28, 2019) (denying Defendant's motion to dismiss Plaintiff's *Monell* claims and noting that "Defendants' specificity arguments are the most

incredulous of them all. DiPippo has alleged numerous specific examples of misconduct that specific PCSD officers engaged in with specific witnesses".)

Similarly, Defendant's assertion that a Plaintiffs' citations do not suffice to support her *Monell* claim ignores a long line of cases, including at the Supreme Court level, finding municipal liability based upon the allegation of a single incident in the context of custom and usage and failure to train and supervise. These cases demonstrate that a municipality can be found liable based on a single constitutional violation, where the unconstitutional consequences of failing to train are so "patently obvious" that there need not be proof of a pre-existing pattern of violations. *See Chamberlain v. City of White Plains*, 986 F.Supp.2d 363, 391-92 (S.D.N.Y 2013)(detailing at length that courts that have continued to apply the single-incident theory post the Supreme Court's decision in *Connick v. Thompson*, 563 U.S. 51 (2011), and citing to several cases where courts have applied the single-incident theory); *see also Edrei v. City of New York*, 254 F. Supp. 3d 565, 581, 2017 U.S. Dist. LEXIS 83269, *29 (S.D.N.Y. May 31, 2017)(RWS)(Denying the City's motion to dismiss Plaintiffs' complaint and holding that "[e]ven in the absence of prior similar violations, the NYC knew that officers with LRADs in the field were likely to face difficult scenarios, such as increasingly agitated protests, where the risk and harm of improperly using LRAD devices are great—problems that could have been avoided with proper training").

District courts in this circuit have denied motions to dismiss *Monell* claims alleging "a custom or policy of tolerating police misconduct" based in part on "at least one other individual prior to the incidents involving the plaintiff." *Tyus v. Newton*, 13-CV-1486 (SRU), 2015 U.S. Dist. LEXIS 42089, at *29-31 (D. Conn. Mar. 31, 2015); *See also Goode v. Newton*, 12-CV-754 (JBA), 2013 U.S. Dist. LEXIS 35171 (D. Conn. Mar. 14, 2013) (denying motion to dismiss City of New London on ground that non-conclusory allegations of one prior incident of falsifying a police

report and manufacturing criminal charges in addition to the two incidents of manufactured criminality in amended complaint raised plausible inference that City had informal custom of tolerating misconduct by its officers and that custom caused the plaintiff's constitutional violations); *Castilla v. City of New York*, 9-CV-5446 (SHS), 2011 U.S. Dist. LEXIS 95619, at *12 (S.D.N.Y. Sept. 6, 2012) (denying motion for judgment on the pleadings regarding municipal liability because plaintiff alleged "a string of incidents in which she was victimized by multiple officers in multiple locations, both on and off City property" as well as "various other instances of male police officers taking sexual advantage of females under their custody or control"); *Michael v. County of Nassau*, 9-CV-5200 (JS)(AKT), 2010 U.S. Dist. LEXIS 82764, at *14 (E.D.N.Y. Aug. 11, 2010) (denying motion to dismiss municipal liability claims against County because multiple denials of plaintiff's rights during an arrest by at least five officers created "plausible inference that Nassau County has an informal policy or custom of at least tolerating police misconduct . . . Likewise, the alleged involvement of numerous officers, the mocking Plaintiff allegedly received when invoking his right to counsel, and the headquarters location, suffices to suggest that Nassau County poorly trained and/or supervised its officers concerning the need not to violate suspects' civil rights.").

In any event, Plaintiff in fact has pled a pattern of constitutional violations. *See* section A, above.  And Defendants overlook that with each case that alleges a policy of lying — with underlying facts where lying accrues against the interests of the public — it becomes more and more plausible that a broad, cross-department policy exists.  Rather than the carefully siloed view of police lying Defendants take — that even if there is a pattern and practice of lying and abuse of protesters, and lying about time theft, and lying about body cameras, and so on, those can ***never*** show a broader culture — the Court should take the commonsense view.  There is a long and

documented history of **general** lying by the NYPD, as long as it somehow benefits individual officers — and regardless of whether that benefit is personal gratification, money, an excuse to engage in violence against people criticizing the police, or anything else.  Indeed, just looking at the news in the last few days, the culture remains at large and clear.  *See* Brittany Kriegstein & Noah Goldberg, *Bronx judge slams NYPD cop for 'unreliable' testimony about drill rapper C Blu*, NY Daily News (Mar. 8, 2022)[4] (noting a finding officers lied extensively about an encounter with a young black man in the Bronx, with the Court saying "There was absolutely zero reason for any of those officers to approach this individual. They approached him, they detained him, they searched him, and no officer even bothered to come up with a halfway legitimate reason for any of that," and "I cannot state how absolutely incredible [the officer's] testimony was. It was inconsistent with the video, it was inconsistent with his fellow officer's testimony, it was self-serving, it had no value.").  And NYPD comments to the press on that (at least so far) suggest this lying will have been — and send the clear message to their officers to keep engaging in — lying without consequence. At the motion to dismiss stage, it's hard to imagine piling more into a complaint than this storied, long, and unchanging history (at least consistent with the Federal Rules' requirement that a complaint be "short" and "plain").

It is worth noting that Plaintiff has also pled a pattern of violations with respect to herself.[5] *Michael* 2010 U.S. Dist. LEXIS 82764, at *13 (denying motion to dismiss Plaintiff's *Monell* claim, in part, because "[t]he conduct alleged in the Complaint took place over several hours. At least five officers allegedly participated in repeated denials of Plaintiff's rights, including his right to be

---

[4] Available at https://www.nydailynews.com/new-york/ny-c-blu-rapper-camrin-williams-nypd-cop-shooting-bronx-20220309-lkqwk7wq7zenxln2tv5xllb6ui-story.html.

[5] Defendants incorrectly categorize each of Plaintiff's allegations with respect to herself – which amount to a string of multiple violations – as one incident.

free from arrest without probable cause, his right to counsel, and his right to be free from excessive force. Some of the officers allegedly mocked Plaintiff during the ordeal, including for invoking his right to counsel"); *see also Bangura v. The City of New York*, 7-CV-2966(DRH)(ETB), 2009 U.S. Dist. LEXIS 808 (E.D.N.Y. Jan. 7, 2009)(denying Defendant's motion to dismiss Plaintiff's *Monell* claim and noting that "[w]hile a single incident alleged in a complaint generally may not suffice to show a municipal policy or custom, here it is alleged that the County failed 'on a continuing basis' to supervise, control and discipline corrections officers and their duty to patrol the areas to which they were assigned")(internal citations omitted).

Plaintiff has pled her *Monell* claims with sufficient detail – more than required in the cases cited above – to withstand a motion to dismiss. Plaintiff has alleged – far from an isolated, one-off incident – that multiple NYPD members swore out false allegations to justify her arrest and assault. In support of the criminal complaint, Defendant Saline made several false allegations, including but not limited to, the following allegations:

> Deponent states that at the above time and place, as he was performing a lawful arrest of a Mr. Brandon Altreche, when Mr. Altreche's mother-the defendant, did begin grabbing hold of him and his colleagues and pulling them away from her son.

> Deponent further states that the defendant began pushing and shoving him and his colleagues as they attempted to effect a lawful arrest of defendant's son. Deponent further states that defendant obstructed governmental administration in that defendant interfered with police officers' ability to make said lawful arrest.

> Deponent further states that when officers then tried to also arrest the defendant-mother, defendant-mother resisted arrest in that she kicked her legs, flailed her arms and pulled away from the officers. Deponent further states that defendant would not allow her hands to be brought behind her back.

Plaintiff These and other allegations were false and defendant Saline knew them to be false when he made them. FAC ¶¶ 34-36.

Defendant Torres similarly swore out false arrest paperwork. Defendant Torres arrived at the scene after Plaintiff's arrest and had no personal knowledge of the incident. Despite that, Defendant Torres filled out an arrest report falsely stating that Plaintiff interfered with another arrest and flailed her arms and pulled her wrists away to prevent being placed in handcuffs. Torres failed to indicate in the report that he did not have personal knowledge of these allegations, which is a violation of the patrol guide. FAC ¶¶ 37-40.

Following Plaintiff's assault by the Defendants, an NYPD supervisor filled out documentation noting "substantial physical injury" to Lopez "which resulted from police activity," while the Defendants filled out an Arrest Report against Plaintiff alleging that they had used no physical force against her. FAC ¶¶ 41.

The Defendants committed perjury. Their constitutional violations continued at the precinct in formal paperwork which they knew would be used to justify Plaintiff's arrest and assault. Rather than let Plaintiff go, Defendants Saline and Torres created an incredible narrative which they memorialized in official documentation against Plaintiff, claiming that they witnessed events for which they were not present and claiming in conflicting documents that no force was used on Plaintiff but also, on the other hand, that she suffered substantial injury "which resulted from police activity."

Leaving aside Defendants' continuous trail of civil rights violations against Plaintiff, as noted above in her Statement of Facts section, Plaintiff has cited to numerous prior incidents and cases in this very district where the City's motion to dismiss similar claims have been denied. *See,* for example, FAC at ¶54 (citing to several cases, some of which in turn contain citations to dozens of other cases which "demonstrate 'a pattern and practice of constitutional abuse' involving the use of mass arrest policies and practice similar to the ones that led to their constitutional

deprivations." *Case v. City of New York*, 233 F. Supp. 3d 372, 404, 2017 U.S. Dist. LEXIS 19374, *65, 2017 (S.D.N.Y. Feb. 10, 2017) (citing *Mandal v. City of New York*, Nos. 02 Civ. 1234, 02 Civ. 1367, 2007 U.S. Dist. LEXIS 83642, 2007 WL 3376897, at *2 (S.D.N.Y. Nov. 13, 2007), *MacNamara v. City of New York* No. 04 Civ. 9216, 2007 U.S. Dist. LEXIS 79870, 2007 WL 3196295, at *1 (S.D.N.Y. Oct. 30, 2007), *Osterhoudt v. City of New York*, No. 10 Civ. 3173, 2012 U.S. Dist. LEXIS 139700, 2012 WL 4481927, at *1-2 (E.D.N.Y. Sept. 27, 2012); *Peat v. City of New York,* No. 12 Civ. 08230 (S.D.N.Y.); *Dinler v. City of New York,* 04-cv-7921 (S.D.N.Y.). *See also, Lynch v. City of New York,* 952 F.3d 67, 79 (2d Cir. 2020) (finding a policy and practice was plausibly alleged where officers were instructed to "make false statements" in arrest paperwork).

### C. Plaintiff Has Adequately Pled That the City's Municipal Policy's Led to The Individual Defendants' Violations of Plaintiff's Rights.

Plaintiff has adequately pled that the City's policies caused the Individual Defendants' constitutional violations against Plaintiff. *Case v. City of New York*, 233 F. Supp. 3d 372, 408, 2017 U.S. Dist. LEXIS 19374, *75, 2017 WL 571530 (S.D.N.Y Feb. 10, 2017) ("Plaintiffs have set forth sufficient allegations to support their claim that the City failed to properly train its officers to ensure that similar constitutional violations would not be repeated, and this failure is the same training failure that led to Plaintiffs' constitutional deprivations.")

"The high degree of predictability may also support an inference of causation--that the municipality's indifference led directly to the very consequence that was so predictable." *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 409-410 (1997); *see also J.K.J. and M.J.J. v. Polk County and Darryl L. Christensen*, 960 F.3d 367, 381, 385 (7th Cir. May 15, 2020)("[F]inding causation is not a mechanical exercise like working a math problem and getting an answer, but instead requires jurors to view evidence in its totality, draw on their life experiences and common sense, and then reach reasonable conclusions about the effects of particular action *and* inaction.

The circumstantial evidence paved multiple roads for the jury to travel to find that Polk County's inaction caused J.K.J. and M.J.J.'s constitutional injuries"). "Predicting how a hypothetically well-trained officer would have acted under the circumstances may not be an easy task for the factfinder. . . . But judge and jury, doing their respective jobs, will be adequate to the task." *City of Canton v. Harris*, 489 U.S. 378, 391 (1989).

In fact, Defendants' arguments ultimately **support** the existence of a municipal policy. As Defendants explain, "the decision whether to commit lie and commit perjury is not a difficult choice, but rather one that can be resolved with common sense." ECF 65 at 9 (as paginated; cleaned up) (citing authority).  Just so.  And yet, time and again, offer "absolutely incredible" (Kriegstein, *supra*) testimony and management does nothing about the "widespread culture of lying and corruption" (*Cordero v. City of N.Y.*, 282 F. Supp. 3d 549, 556 (E.D.N.Y. 2017)).  In fact, the Corporation Counsel itself notes that (in the protest context) despite litigation after litigation identifying issues (including with truth telling), "the NYPD does not demonstrate a consistent commitment to reviewing and responding to external critiques regarding the policing of protests." New York City Law Department, Corporation Counsel Report Pursuant to Executive Order 58 at 2 (2020).[6]  In short, as Defendants say, deciding not to lie in an attempt to cage a human being **isn't** a hard choice.  But members of the NYPD do it routinely — and that is extraordinarily well documented.  *See, e.g.,* FAC ¶ 52 (citing more than a dozen reports); ¶¶ 55-58 (citing *dozens* of examples, including three **literal acknowledgements by high ranking members of the NYPD** of a code of silence).  Something gets in the way of those officers' "common sense" and does so routinely.  Only one option is plausible:  their training and the culture of the department. Defendants certainly do not offer any other explanation for how the lying continues.  And this is

---

[6] Available at https://www1.nyc.gov/assets/law/downloads/pdf/ProtestReport-np.pdf

where Defendants' treatment of *Lynch* (952 F.3d 67, 79 (2d Cir. 2020)) falls apart entirely:  if officers are instructed to write false information in arrest records during protests, are Defendants suggesting those giving the instructions are clarifying "but never do this on non-protest arrests!"  ECF No. 65 at 5-6.  Surely not.[7]  And on a motion to dismiss, that is more than enough to let Plaintiff see if she can find more evidence.

Beyond that, Defendants would not even be entitled to dismissal of Plaintiff's case at the summary judgment stage on the basis of their causation arguments.  Indeed, "[i]ssues of proximate cause are normally questions of fact for the jury to decide, unless the court concludes that a reasonable jury could reach only one conclusion." *Packer v. Skid Roe, Inc.*, 938 F.Supp. 193, 196 (S.D.N.Y. 1996).  Plaintiff has alleged the culture, policy, and training at length.  That gets presumed true.  She also alleged (presumed true) that none of what is included in her arrest paperwork was true — it was a fanciful, self-serving story.  The connection that and the long history of similar lies is direct and obvious.  Any challenge to the causal link between those things belongs at the jury stage.

**D.  The Court should Deny Defendants' Request for Bifurcation of *Monell* Discovery.**

The Court should deny Defendants' request for bifurcation. Courts have previously deemed bifurcation inappropriate in cases where, as here, the Plaintiff presents a putatively triable claim as to Defendant City's *Monell* liability regarding its supervision, training, and discipline of its

---

[7] In reply, if Defendants fail to suggest that the instructions given to countless officers to "make false statements" make this distinction, that concedes the substance of their motion.  *Lynch* found the policy existed, and the effect of such a policy is pure commonsense (at least at the pleading stage).  If officers are told they can freely "make false statements" in one context where it deprives New Yorkers of their freedom, why would they draw any distinction?  Defendants offer no explanation.  And if they make no offer, that is a "failure to respond to [a] substantial argument" on the case, and "can be taken as a concession of the case's applicability." *Gallagher v. NY State Bd. of Elections*, 477 F. Supp. 3d 19,48 n.4 (S.D.N.Y. 2020).

police officers and prosecutors. *See*, e.g., *Ambrose v. City of New York*, 623 F. Supp. 2d 454, 480 (S.D.N.Y. 2009). It is well-settled that *Monell* liability may be found even in the absence of individual liability, and therefore bifurcation would not necessarily limit proceedings in this matter, even in the unlikely event that none of the individual named defendants are found liable for the various violations of the Plaintiff's rights. *Askins v. Doe*, 727 F. 3d 248, 253–54 (2d Cir. 2013) ("It does not follow, however, that the plaintiff must obtain a *judgment* against the individual tortfeasors in order to establish the liability of the municipality. It suffices to plead and prove against the municipality that municipal actors committed the tort against the plaintiff and that the tort resulted from a policy or custom of the municipality. In fact, the plaintiff need not sue the individual tortfeasors at all, but may proceed solely against the municipality"); *see also Barrett v. Orange County Human Rights Comm'n*, 194 F.3d 341, 350 (2d Cir. 1999).

Additionally, Defendants seem to argue that separate proof is required to establish *Monell* and individual liability. This is false and a red flag that Defendants intend to exploit any bifurcation to justify withholding discovery related to the Individual Defendants. Though a boilerplate argument Defendants raise in their routine request for bifurcation, NYPD procedures and training materials in fact go to the merits of individual liability and are "relevant and helpful to determining the reasonableness of an officer's conduct." *Bermudez v. City of New York*, 2019 U.S. Dist. LEXIS 3442, *14, 2019 WL 136633 (E.D.N.Y., Jan. 8, 2019) (citing *Gogol v. City of New York*, No. 15 CV 5703, 2017 U.S. Dist. LEXIS 221874, 2018 WL 4616047, at *4 (S.D.N.Y. Sept. 26, 2018); *see* also *Baines v. City of New York*, 2016 U.S. Dist. LEXIS 58576, *6 (S.D.N.Y. May 3, 2016)(JMF)(refusing to overrule Magistrate Judge Cott's decision that "training materials are within the scope of permissible discovery" even in the absence of municipal liability claims); *See also Nnodimele v. Derienzo*, No. 13 CV 3461 (ARR)(RLM), 2016 WL 3561708, at *14 (E.D.N.Y.

June 27, 2016) ("This court will also permit the parties to introduce relevant portions of the Patrol Guide and related testimony. Defendants seek to exclude such evidence because it contains guidelines that are distinct from standards imposed by the United States Constitution. Accordingly, defendants argue, the jury could be misled that violations of the Patrol Guide establish violations of the federal constitution. However, Chief Judge Mann has already ruled—in a memorandum and order unchallenged by defendants—that Patrol Guide evidence is admissible. This court agrees and joins a growing number of courts holding that '[i]n constitutional tort cases, expert testimony regarding sound professional standards governing a defendant's actions can be relevant and helpful.'") (*quoting Jimenez v. City of Chicago*, 732 F.3d 710, 721 (7th Cir. 2013)).

If the Court grants Defendants' request for bifurcation, this would mean, at the least, that Defendants will try to preclude Plaintiff from even deposing the Defendants about their training and background, their understanding of proper procedures for making arrests, the proper method for processing those arrests, and whether they were trained to tell the truth – all areas of inquiry relevant to individual liability. Such a decision would render an absurd result which the City would exploit to justify withholding basic discovery which is at their fingertips or within their knowledge.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court issue an Order denying Defendants' partial motion to dismiss in its entirety and their motion for bifurcation, and for other such relief as the Court deems proper.

Dated: New York, New York
      March 10, 2022

                                  /s/
                           _____
                           J. Remy Green, Esq.
                           Jessica Massimi, Esq.
                           COHEN & GREEN P.L.L.C.
                           1639 Centre Street, Suite 216

Ridgewood, NY  11385
929-888-9480
remy@femmelaw.com
jessica@femmelaw.com
*Attorneys for Plaintiffs*